## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**NICOLE FEDYNICH,** *et al.,*

      **Plaintiffs,**

**v.**                                                  **Civil Action No. 3:20cv260**

**JUANA LOZANO, ASSISTANT**
**MANAGER, VALOR APARTMENTS,** *et al.,*

      **Defendants.**

### MEMORANDUM OPINION

This matter comes before the Court on three motions:

(1)    Plaintiffs Nicole and Elizabeth Fedynich's ("the Fedynichs") Motion to Joinder this Removal Action with 3:20cv260 (the "Motion to Join"), (ECF No. 10);

(2)    Defendants Juana Lozano; Marie White; Steve Boyce; Angelica Redfern; Valor Phase II, LP; and, S. L. Nusbaum Realty, Co.'s (collectively, the "Defendants") Motion to Dismiss[1] pursuant to Federal Rule of Civil Procedure 12(b)(6)[2] (the "Motion to Dismiss"), (ECF No. 12); and,

(3)    Defendants Motion to Remand and/or Strike Plaintiffs' Motion to Correct (the "Motion to Remand or Strike"), (ECF No. 14).

The Fedynichs, proceeding *pro se*, timely responded to the Motion to Dismiss and to the

Motion to Remand or Strike, (ECF Nos. 21–22), and Defendants replied, (ECF Nos. 23–24).

These matters are ripe for disposition.

---

[1] Defendants filed, along with the Motions to Dismiss, a notice consistent with the requirements set forth in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K).  (ECF No. 12-1.)

[2] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331[3] and 1367(a).[4] For the reasons that follow, the Court will grant in part and deny in part the Motion to Dismiss, grant in part and deny in part the Motion to Remand or Strike, and, deny the Motion to Join.

## I. Factual and Procedural Background

The Fedynichs bring this Fair Housing Act and related-claims action against the six Defendants. The Fedynichs assert that Defendants have discriminated against them under federal law by failing to rectify smoke and asthma triggers in their Section 8 housing and by otherwise discriminating against them in response to their complaints. (*See generally* Am. Compl.)

---

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Fedynichs identify their "[b]asis for jurisdiction" as the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–19 and other related federal statutes and regulations. (Am. Compl. 15, ECF No. 8.)

[4] The Court exercises supplemental jurisdiction over the Fedynichs' state law claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). The Amended Complaint alleges breach of contract and constructive eviction. (*See generally* Am. Compl.)

A.    **Factual Background**[5]

The Fedynichs allege that Elizabeth suffers from "severe asthma" that she "self-verified."

(Am. Compl. ¶ 3.)  Due to Elizabeth's asthma, the Fedynichs sought an apartment that would

"suit their disability related housing needs."  (*Id.* ¶ 1.)

On March 11, 2020, the Fedynichs "signed a lease and moved into Valor Phase II LP"

("Valor").  (*Id.* ¶ 2.)  "Valor is a low-income tax credit (LITC) property that accepts all housing

choice vouchers."  (*Id.*)  To qualify for a Valor apartment, the Fedynichs "utilized their section 8

housing choice voucher."  (*Id.*)  Prior to signing, the Fedynichs "looked at the apartments and

filled out an application," which Valor approved.  (*Id.* ¶ 1.)

After Valor approved their application, the Fedynichs met with Juana Lozano, Valor's

Assistant Manager.  (*Id.* ¶ 2.)  During the meeting, the Fedynichs "mentioned their need for a

smoke free property."  (*Id.* ¶ 1.)  Lozano informed the Fedynichs that Valor "[was] not a smoke

free property" and as such, suggested the Fedynichs "make sure [Valor] is going to be a fit."  (*Id.*

¶ 2.)  Specifically, "Valor's policy is to allow smoking on balconies or parties and in all common

areas and prohibiting it only inside the apartment itself."  (*Id.* ¶ 1.)  Lozano "brought up the

property not being smoke free twice."  (*Id.* ¶ 2.)

Nonetheless, on March 11, 2020, the Fedynichs moved into Valor because the apartment

"was a non-indoor smoking unit" and they "had no other options that would suit their . . . needs."

(*Id.*)  The evening of their move-in, the Fedynichs allege they "discovered cigarette and

---

[5] For the purpose of the Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in the Fedynichs' Amended Complaint as true, and draw all reasonable inferences in favor of the Fedynichs. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

marijuana smoke odor in their apartment." (*Id.*)  On March 12, 2020, the next day, the

Fedynichs reported the incident to Lozano. (*Id.*)  The Fedynichs "suspected it was the person

next door to them on the first floor" and suggested to Lozano that they might seek a restraining

order. (*Id.*)  Lozano asked the Fedynichs to "[h]old off," and informed them that Valor's policy

was to "reach out to residents" once it received a complaint. (*Id.*)  Lozano assured the Fedynichs

that Valor would "handle it from here." (*Id.*)

The same day, and one day after moving in, Elizabeth requested that Valor, through

Lozano, "provide her with air purifiers" because Elizabeth allegedly could not "endure the

ongoing cigarette smoking affecting her lungs." (*Id.* ¶ 3.)  On April 3, 2020, twenty-two days

later, Valor delivered the air purifiers "by which point . . . Elizabeth had suffered [a] severe

asthma attack and was in the middle of [another]." (*Id.* ¶ 4.)  The Fedynichs allege that

"Defendants tone was hostile and resentful for having to provide" the air purifiers. (*Id.* 6.)

When smoking in neighboring apartments continued, the Fedynichs continued to follow

up with Valor with "pleas for assistance." (*Id.* ¶ 5.)  However, the Fedynichs allege that

Defendants proceeded to "block [their] emails and refuse[] to answer their office phone and . . .

return calls." (*Id.*)  The Fedynichs allege that "Defendants shut down the[ir] offices so there was

no way to communicate with [Defendants]." (*Id.*)  As the landlord-tenant relationship

deteriorated, Defendants "serve[d]  a 21/30 notice[6] on [the Fedynichs] for . . . lease violations"

---

[6] Under Virginia Code § 55.1-1245, a "21/30 notice" is a landlord's written notice served on the tenant specifying "acts and omissions" that constitute a "material noncompliance by the tenant with the rental agreement or a violation of § 55.1-1227."  It states "that the rental agreement will terminate upon a date not less than *30 days* after receipt of the notice if the breach is not remedied in *21 days* and that the rental agreement shall terminate as provided in the notice." Va. Code Ann. § 55.1-1245(A).

(the "Notice").[7]  (*Id.* ¶ 6.)  The Fedynichs allege that they attempted to ask Lozano about the Notice, but that she "refused to answer." (*Id.*)  Similarly, the Fedynichs allege that Assistant Vice President of Nusbaum Steve Boyce and Regional Property Manager Angelica Redfern also refused to discuss the Fedynichs' complaints.  (*Id.* 11–12.)  The Fedynichs allege that at some point they came to learn of another family "who [was] moving out because of marijuana affecting their infant daughter." (*Id.* 10.)  In general, the Fedynichs allege that smoke "emanat[ed] from the buildings." (*Id.*)

As the smoking persisted, the Fedynichs acted on their own accord.  First, the Fedynichs "wrote a letter to the residents of the building . . . to inform them of their rights to a smoke free drug free property." (*Id.* 13.)  Second, because the "air purifiers [were] simply insufficient to deal with" the alleged asthma triggers, including the smell of air fresheners, the Fedynichs began sleeping on their patio in a tent.  (*Id.* 10, 14.)  Finally, the Fedynichs recorded a neighbor allegedly "engaged in a conversation with Elizabeth where she admitted smoking in her apartment and was adamant about the fact that she was not going to stop smoking inside." (*Id.* 6.)

Defendants offered the Fedynichs a number of alternatives for relief.[8]  First, Defendants offered the Fedynichs $1500 to move out of their apartment.  (*Id.* ¶ 6.)  The Fedynichs declined this offer.  (*Id.*)  Second, Valor offered the Fedynichs "more money to move out, . . . around $3000." (*Id.*)  Again, the Fedynichs refused.  (*Id.*)  Third, Defendants offered to move the Fedynichs to a different Valor unit.  (*See id.* 11.)  Sometime after their refusal, Defendants

---

[7] The Fedynichs do not attach either their leasing agreement or the Notice to the Amended Complaint.  (*See* Am. Compl.)

[8] The Amended Complaint does not allege specifically which Defendant communicated the offers.  (Am. Compl. ¶ 6.)

5

allegedly "inform[ed] [the Fedynichs] that an unlawful detainer suit was going to be filed against them and they needed to move out" (the "Unlawful Detainer Action"). (*Id.* ¶ 6.)

The Fedynichs allege that Defendants' "real true agenda . . . was to make [them] vacate the premises." (*Id.* 11.) Specifically, the Fedynichs allege that Defendants "were counting on [them] to walk away from their home . . . [in] a calculated move to rid themselves of the problem they created by unfairly treating tenants." (*Id.* 12.) The Fedynichs allege that the air quality in their apartment caused their health to "deteriorat[e]," creating the need for a nebulizer machine. (*Id.* 12.) The Fedynichs report that the smoke caused one "trip to the ER," as well as other "well documented incidents." (*Id.*) Additionally, the Fedynichs allege that their utilities increased as a result of "having to run the heat while the windows were open to . . . try and obtain fresh air in their apartment." (*Id.* 16.) As a result, the Fedynichs seek damages in the amount of $1,000,000. (*Id.*)

### B.  **Procedural Background**

On April 9, 2020, Elizabeth Fedynich, acting *pro se* and requesting to proceed *in forma pauperis,* filed a complaint alleging that Defendants violated federal statutes and regulations regarding fair housing requirements.[9] (Compl., ECF No. 1.) Although the initial complaint also named Nicole Fedynich as a plaintiff, Nicole did not file the requisite paperwork to proceed *in forma pauperis.*

On April 14, 2020, the Court provisionally filed the initial complaint, which Elizabeth submitted with her Motion for Leave to proceed *in forma pauperis.* (ECF No. 3.) After finding

---

[9] On that same day, the Fedynichs acting *pro se* seemingly filed this same action twice under No. 20cv262. *See Fedynich v. Lozano*, No. 20cv262. Because the Fedynichs failed to follow the Court's directives and timely file a "short plaint statement of [their] claims," the Court dismissed their claims in No. 20cv262 without prejudice "for failure to prosecute." *See id.* (quoting June 15, 2020 Order, ECF No. 7).

that the proffered complaint did not comply with Federal Rule of Civil Procedure 8,[10] (Apr. 14,

2020 Order 2, ECF No. 2), the Court ordered the Fedynichs to file an Amended Complaint no

later than June 1, 2020. (*Id.*) The Court further ordered Nicole to file her own Motion for Leave

to proceed *in forma pauperis*. (*Id.*)

On June 3, 2020, two days after this Court's deadline, Nicole filed a Motion for Leave to

Proceed *in forma pauperis*, and together, Plaintiffs filed an Amended Complaint, (ECF No. 6-1),

with a Motion for Extension of Time to File an Amended Complaint (the "Motion for

Extension"), (ECF No. 6). On June 29, 2020, the Court granted Nicole's Motion for Leave to

Proceed *in forma pauperis* and the Motion for Extension. (ECF No. 7.)

On July 10, 2020, prior to the filing of the Unlawful Detainer Action, the Fedynichs filed

the Motion to Join, seeking to remove an action that Defendants would later file in the

Fredericksburg General District Court. (ECF No. 10.) No Defendants responded to the Motion

to Join, and the time to do so has expired. On July 17, 2020, Defendants filed the Motion to

Dismiss. (ECF No. 12.) The Fedynichs timely responded to the Motion to Dismiss, (ECF No.

21), and Defendants replied, (ECF No. 24). On that same day, Defendants filed the Motion to

Remand or Strike. (ECF No. 14.) The Fedynichs also timely responded to the Motion to

Remand or Strike, (ECF No. 22), and Defendants replied, (ECF No. 24).

---

[10] Rule 8 states, in pertinent part:

> A pleading that states a claim for relief must contain . . . (1) a short and plain
> statement of the grounds for the court's jurisdiction, unless the court already has
> jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain
> statement of the claim showing that the pleader is entitled to relief; and (3) a
> demand for the relief sought, which may include relief in the alternative or different
> types of relief.

Fed. R. Civ. P. 8(a)(1)–(3).

In the Amended Complaint, the Fedynichs bring eight counts:

(1)     **Count I:** Violation of the FHA (the "FHA Claim");
(2)     **Count II:** Violation of the Rehabilitation Act of 1973 (the "Rehabilitation Act Claim");
(3)     **Count III:** Violation of 24 C.F.R. § 100.600 in creating a hostile environment (the "Hostile Environment Claim");
(4)     **Count IV:** Violation of 24 C.F.R. § 100.600 via *quid pro quo* harassment (the "*Quid Pro Quo* Harassment Claim");
(5)     **Count V:** Alleged disparate impact (the "Disparate Impact Claim");
(6)     **Count VI:** Alleged retaliation (the "Retaliation Claim")
(7)     **Count VII:** Alleged breach of contract (the "Breach of Contract Claim"); and,
(8)     **Count VIII:** Alleged constructive eviction (the "Constructive Eviction Claim").[11]

For the reasons that follow, the Court will grant in part and deny in part the Motion to Dismiss, grant in part and deny in part the Motion to Remand or Strike, and, deny the Motion to Join.

## II.  Standards of Review

### A.    Obligation to Liberally Construe *Pro Se* Pleadings

Because the Fedynichs proceed *pro se*, the Court liberally construes their filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted).  Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Federal Rule of Civil Procedure 8 for "all civil actions").  A *pro se* plaintiff litigant must

---

[11] Although the Fedynichs do not include constructive eviction in their identified list of claims, the Court liberally interprets the Amended Complaint to bring a constructive eviction claim because the Fedynichs allege that "all Defendants actions have resulted in a constructive eviction." (Am. Compl. 14.)

8

allege facts sufficient to state a cause of action. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Cir. Ct. of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014) (internal quotation marks and citations omitted).

**B.   Rule 12(b)(6)**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a Complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a Complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.") Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the Complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*,

9

588 F.3d at 193 (citation omitted). The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the Complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)).

### III. Analysis

Defendants challenge the sufficiency of the Fedynichs' Amended Complaint on several grounds. First, Defendants argue that the Fedynichs again have not complied with Rule 8 or the Court's Order regarding their Amended Complaint.[12] Second, Defendants aver that the Fedynichs do not allege sufficient plausible facts to support their claims. Lastly, Defendants contend that the Fedynichs do not allege sufficient facts against any particular defendant that can survive a motion to dismiss.

For reasons stated below, the Court will grant the Motion to Dismiss as to all counts with prejudice except Count VI, which will remain. The Court will then grant in part and deny in part the Motion to Remand or Strike and deny the Motion to Join, finding that no grounds for removal exist to join the Unlawful Detainer Action with this case.

---

[12] Although the organization of the Fedynichs' claims can be convoluted, the Court remains under a duty to construe *pro se* filings liberally. *See Erickson*, 551 U.S. at 94 ("A document filed *pro se* is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted). As such, the Court proceeds to the merits of the Fedynichs claims, finding that the Amended Complaint passes muster under Federal Rule of Civil Procedure 8. *See id.*

**A.    The Court Will Grant the Motion to Dismiss as to All Counts
Except Count VI**

First, the Court will dismiss Counts I and II under the FHA and Rehabilitation Act because the Fedynichs do not plausibly allege that:  (1) they qualify as disabled under either statute; (2) Defendants failed to provide them with reasonable accommodations; or, (3) a sufficient nexus exists between any alleged disability and Defendants' alleged refusal to provide reasonable accommodations.

Next, the Court will dismiss Counts III and IV for hostile environment and *quid pro quo* harassment under 24 C.F.R. § 100.600 because the Fedynichs fail to plausibly allege that Defendants interfered with their protected rights under the FHA by either creating a hostile environment or subjecting the Fedynichs to *quid pro quo* harassment.  The Court also will dismiss Count V because the Fedynichs fail to allege any policy that has a robust nexus to a disparate impact on a particular group.  As the last claim brought under the FHA, the Court will deny the Motion to Dismiss as to Count VI, finding that the Fedynichs plausibly allege facts sufficient to allow a reasonable inference that Defendants retaliated against them by citing a letter sent by the Fedynichs to their neighbors regarding housing rights as a basis for eviction.

Finally, the Court will dismiss all other state law claims against Defendants. The Court will dismiss Count VII because the Fedynichs do not allege any legally enforceable obligation between the Parties requiring Defendants to evict, or otherwise reprimand, other tenants allegedly smoking indoors.  The Court will then dismiss Count VIII because the Fedynichs do not allege that they abandoned their apartment nor point to an intentional act or omission by Defendants that deprived them of possession.

1.      **The Court Will Dismiss the FHA and RA Claims Because the Fedynichs Fail to Show How They Qualify as Disabled Under the Law and the Defendants Accommodations Were Reasonable**[13]

Because the Fedynichs do not plead sufficient plausible facts to show they suffer from a "handicap" or "disability" under the FHA or the Rehabilitation Act[14] or that Defendants failed to provide them with reasonable accommodations, the Court will Dismiss the FHA and Rehabilitation Act Claims.

a.      **Legal Standard:  The Fair Housing Act ("FHA")**

The FHA prohibits discrimination in housing on the basis of certain enumerated classifications, including a "handicap."  42 U.S.C. §§ 3601–19.  Specifically, the FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person."  § 3604(f)(2)(A).  Similar to other federal statutes, the FHA defines "handicap" as:  "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment; or, (3) being regarded as having such an impairment."  § 3602(h).  The term "major life activities" refers to

---

[13] In the Amended Complaint, the Fedynichs list, as legal support for their claims, a number of federal regulations that incorporate or interpret the FHA.  Because the regulations do not bring unique or novel questions of law, the Court analyzes them along with the Fedynichs' claims under the FHA.  *See generally Nat'l Fair Hous. All. v. Bank of Am., N.A.*, 401 F. Supp. 3d 619 (D. Md. 2019) (discussing the FHA and the Department of Housing and Urban Development's ("HUD") corresponding regulations that interpret FHA sections).

[14] Although the FHA uses "handicap" as opposed to "disability," "Congress expressed an intent that the Fair Housing Act's definition of 'handicap' be interpreted consistently with the regulations regarding the same term in the Rehabilitation Act of 1973."  *United States v. S. Mgmt. Corp.*, 955 F.2d 914, 918 n.1 (4th Cir. 1992); *see* 29 U.S.C. § 705(20)(B).  Therefore, the Court will conduct only one analysis as to whether the Fedynichs plead sufficient facts to show they are disabled.

"those activities that are of central importance to daily life." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 274 (4th Cir. 2004) (internal quotations and citations omitted).

Although courts agree that breathing qualifies as a "major life activity," the determination of whether a plaintiff is "substantially limit[ed]"[15] in her ability to breathe must be made on a "case-by-case basis, particularly when the alleged impairment is asthma or allergies." *Bridges v. Reinhard*, No. 3:08cv253, 2008 WL 5412843, at \*6 (E.D. Va. Dec. 29, 2008) (citing *Tangires v. Johns Hopkins Hospital*, 79 F. Supp. 2d 587, 594–95 (D. Md.), *aff'd*, 230 F.3d 1354 (4th Cir. 2000)) (discussing "disability" under the ADA using the same standard as the FHA). Specifically, "the severity of the condition can vary significantly from individual to individual," as well as "the duration of any episode." *See id.* Therefore, the Court must examine relevant information as to a plaintiff's asthma such as "the particular symptoms alleged by the plaintiff, the duration of her episodes, . . . and the overall impact the [asthma] has on her ability to breathe." *Id.* Intermittent attacks do not qualify as a substantial impairment when daily activities are generally unaffected. *Id.* at \*7. To state a claim under the FHA and Rehabilitation Act, a plaintiff must do more than label herself as disabled. *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 639 (4th Cir. 2016).

Under the FHA, discrimination includes a refusal "to make reasonable modifications of existing premises" or "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." § 3604(f)(3). To state a claim alleging a failure to accommodate

---

[15] Although not at issue here, "the factors considered when determining if a plaintiff is substantially limited in the major life activity of breathing" include: (1) "the nature and severity of the impairment;" (2) "the duration or expected duration of the impairment;" and, (3) "the permanent or long-term impact of the impairment." *See Matarese v. Archstone Pentagon City*, 761 F. Supp. 2d 346, 352, 358 (E.D. Va. 2011) (citation omitted).

13

under the FHA, a plaintiff must show that "the accommodation is (1) reasonable[16] and

(2) necessary[17] (3) to afford handicapped persons equal opportunity[18] to use and enjoy

housing." *Bryant Woods Inn*, 124 F.3d at 603 (citing 42 U.S.C. § 3604(f)(3)). To survive a

motion to dismiss an FHA discrimination claim, a plaintiff must plead facts that demonstrate a

sufficient nexus between the alleged disability and discriminatory act—in this case, the denial of

reasonable accommodations. *Hardaway v. Equity Residential Mgmt., LLC*, No.11cv1924, 2012

---

[16] In determining whether the reasonableness inquiry has been met, a court may weigh the costs and benefits and consider the existence of alternatives to accomplish the benefits more efficiently. The Fourth Circuit has found that

> in measuring the effects of an accommodation, the court may look not only to its functional and administrative aspects, but also to its costs. "Reasonable accommodations" do not require accommodations which impose undue financial and administrative burdens, . . . or changes, adjustments, or modifications to existing programs that would be substantial, or that would constitute fundamental alterations in the nature of the program.

*Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 604 (4th Cir. 1997) (quotations and citations omitted).

[17] As to the "necessary" requirement, the Fourth Circuit has provided that

> the FHA provision mandating reasonable accommodations which are *necessary* to afford an equal opportunity—requires the demonstration of a direct linkage between the proposed accommodation and the "equal opportunity" to be provided to the handicapped person. This requirement has attributes of a causation requirement. And if the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be "necessary."

*Bryant Woods Inn*, 124 F.3d at 604 (citations omitted).

[18] As to the "equal opportunity" requirement, the Fourth Circuit stated that it

> provides a limitation on what is required. The FHA does not require accommodations that increase a benefit to a handicapped person above that provided to a nonhandicapped person with respect to matters unrelated to the handicap.

*Bryant Woods Inn*, 124 F.3d at 604.

14

WL 3903489, at *6 (D. Md. Sept. 6, 2012) (dismissing FHA claims where "[i]n addition to
failing to elaborate on the nature of [the plaintiff's] disability, [the plaintiff has] not alleged a
plausible nexus between her disability and the alleged discriminatory acts").

###### b.      Legal Standard:  The Rehabilitation Act

Section 504 of the Rehabilitation Act states in relevant part that "no otherwise qualified
individual with a disability . . . shall, solely by reason of her or his disability, be excluded from
participation in, or be denied the benefits of, or be subjected to discrimination under any program
or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

To survive a motion to dismiss under the Rehabilitation Act, a plaintiff must plausibly
allege that "(1) she has a disability, (2) she is otherwise qualified to receive the benefits of a
public service, program or activity, and (3) she was excluded from participation in or denied the
benefits of such service, program, or activity, or otherwise discriminated against, on the basis of
her disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498
(4th Cir. 2005) (citations omitted).

For the purposes of the Rehabilitation Act, a "disability" is "a physical or mental
impairment that substantially limits one or more major life activities of [an] individual; a record
of such an impairment; or being regarded as having such an impairment."  42 U.S.C. § 12102(1);
*see* 29 U.S.C. § 705(9)(B) (providing that 42 U.S.C. § 12102 will define  the term "disability"
for the purposes of the Rehabilitation Act).

###### c.      The Fedynichs Do Not Plausibly Allege That They Qualify as Disabled Under the FHA and Rehabilitation Act

Because the Fedynichs do not assert more than mere labels and conclusions that they
suffer from a disability, the Court grants the Motion to Dismiss as to Counts I and II.

First, Nicole does not allege any "handicap" or "disability." The Fedynichs merely discuss Nicole's health generally, stating that the air quality caused both Elizabeth and Nicole's health to deteriorate. (Am. Compl. 12.) Although the Court must interpret "disability" broadly under 42 U.S.C. § 3601, the Court will dismiss Nicole's FHA and Rehabilitation Act Claims because the Amended Complaint does not include facts to show that Nicole suffers from any disability.

Second, the Fedynichs do not allege sufficient plausible facts that would allow the Court to conclude that Elizabeth possesses a "handicap" or "disability" under either statute. The determination of whether a particular impairment constitutes a handicap must be made on a "case-by-case basis, particularly when the alleged impairment is asthma or allergies." *Bridges,* 2008 WL 5412843, at *6. However, the Fedynichs do not submit sufficient plausible facts for this Court to conduct a case-specific analysis as to Elizabeth's asthma. Specifically, the Fedynichs allege that within the twenty-two days prior to receiving the air purifiers, Elizabeth "had suffered [a] severe asthma attack" and was experiencing a second attack when the air purifiers arrived.[19] (Am. Compl. ¶ 4.) Otherwise, the Fedynichs generally assert that the air quality in their apartment created the need for a nebulizer machine and caused one "trip to the ER," as well as other "well documented incidents." (*Id.* 12.) Without more, the Court cannot

---

[19] As such, the Court reasonably infers that Elizabeth suffered from two asthma attacks in just under one month. On its face, the Court cannot find that such a record compares to others in which plaintiffs have suffered from asthma so severe it "substantially limits [the] major life activit[y]" of breathing. *See Matarese*, 761 F. Supp. 2d at 352–53, 359 (recognizing, on summary judgment motion, a material fact in dispute where plaintiff, after contact with smoke, dust, and mold, experienced "dizz[iness], coughing, . . . trouble breathing, and . . . debilitating headaches, sore throats, and respiratory infections" that could last for months).

conduct the "case-by-case" analysis required when "the alleged impairment is asthma." *Bridges*, 2008 WL 5412843, at *6.[20]

Although courts generally find that asthma "can affect an individual's major life activity of breathing, these illnesses present in varying levels of severity" and the Fedynichs "must still prove that [Elizabeth's] condition, be it asthma . . . 'substantially limit[s]' her ability to breathe."[21] *Godbolt v. Trinity Prot. Servs., Inc.*, 2017 WL 2579020, at *5 (D. Md. June 12, 2017) (citation omitted). While the Fedynichs offer some allegations that Elizabeth's condition affected her well-being, their allegations fall short of showing that Elizabeth suffers from a qualifying disability that substantially limits her ability to breathe. Therefore, the Court will dismiss Counts I and II.

> **d.    The Fedynichs Do Not Plausibly Allege That Defendants Refused to Provide Them Necessary Accommodations**

Even if Plaintiffs plausibly alleged that they suffered from a qualifying disability under the FHA and Rehabilitation Act, the Court finds that they do not plausibly allege how Defendants refused to make, at the very least, necessary accommodations. The Fedynichs concede that Defendants granted their request for air purifiers and provided them within twenty-two days of their original complaint, which the Fedynichs made only one day after moving in.[22]

_____

[20] Although the Fedynichs' argument that the apartment's air quality required them to sleep on the patio, they do not allege how such a result came to fruition based on any facts as to Elizabeth's asthma.

[21] Even if the Fedynichs presented additional facts in support of Elizabeth's asthma, the Court finds that it likely would not "substantially limit" her ability to breathe because her episodes, based on the record before the Court, only "intermittently" affect her. *See Bridges*, 2008 WL 5412843, at *7.

[22] In the Amended Complaint, the Fedynichs allege that Defendants "threatened to take back the air purifiers [and to] make [the Fedynichs] pay for them." (Am. Compl. 5.) Even taking this allegation as true, the Amended Complaint does not contain any allegation that the

Defendants also offered a number of other accommodations, including—more than once—providing the Fedynichs with money to relocate, offering a transfer of units, and allowing tenants the opportunity to break their lease early.

Essentially, the Fedynichs argue that Defendants failed to provide them with reasonable accommodations because they did not evict their neighbors whom the Fedynichs suspected of smoking in their unit. Reserving the question of reasonableness for a later stage,[23] the Court nevertheless finds that the Fedynichs cannot show that evicting their neighbors would be a "necessary" accommodation because it could not lead to a "direct amelioration" of Elizabeth's alleged asthma. *See Bryant Woods Inn*, 124 F.3d at 604.

The Fedynichs admit in their Amended Complaint that Defendants specifically informed the Fedynichs twice of the smoking policy, and yet the Fedynichs "moved in anyway." (Am. Compl. ¶ 2.) Because Valor's smoking policy allows tenants to smoke on the premises, including balconies and common areas, removing surrounding tenants who smoke in their units could not directly ameliorate Elizabeth's asthma.[24] Therefore, the absence of the Fedynichs'

---

Defendants actually reclaimed the air purifiers or forced the Fedynichs to forego the air purifiers after receiving them. (*See generally id.*)

[23] According to the Fourth Circuit, "a reasonable accommodation is one that is feasible or plausible," and ascertaining the reasonableness of a proposed accommodation involves a factual question inappropriate at this procedural juncture. *Reyazuddin v. Montgomery Cnty., Md.*, 789 F.3d 407, 414, 416 (4th Cir. 2015). As such, the Court reserves the question of reasonableness for a later time when the Parties may present the Court with a more robust record.

[24] If the Fedynichs' concerns centered on their neighbors' smoking habits, then Defendants' offer to move the Fedynichs to a different apartment may have constituted necessary accommodation. But the Fedynichs state that the smoking issue would not be remedied because smoking occurred across the premises. (*See* Am. Compl. 11.) Although the Fedynichs allege that they refused Defendants' offer to move because Defendants did not enforce the no indoor-smoking policy, the Fedynichs do not allege facts supporting a reasonable inference that a new unit would not ameliorate Elizabeth's asthma.

neighbors smoking in their apartment could not guarantee a smoke-free environment where Valor otherwise allowed residents to smoke in common areas and on their balconies—all of which could impact the air quality in the Fedynichs' apartment. For the same reason, the Fedynichs' Amended Complaint does not support a reasonable inference that the in-unit smoking comprised the only or even the main source of their air quality concerns. The Fedynichs plainly aver that smoke "emanat[ed] from the buildings." (*Id.* 10.) Even reading the Amended Complaint liberally and drawing all inferences in their favor, the Court finds that the Fedynichs' requests that Defendants remove their neighbors for allegedly smoking in their unit, when the Fedynichs knew that Valor's policies allowed for smoking otherwise, cannot be said to be a "necessary" accommodation.

Nor would the Fedynichs' request create an "equal opportunity" for them. *Bryant Woods Inn*, 124 F.3d at 604. As previously discussed, Lozano warned the Fedynichs that the premises allowed for smoking, except indoors. To make the premises entirely smoke-free would "increase [the] benefit" to the Fedynichs "above that provided to a nonhandicapped person with respect to matters unrelated to the handicap." *Id.*

In the instant matter, the Fedynichs acknowledge that Defendants did not refuse their request for air purifiers. Although the Fedynichs allege that the air purifiers have been insufficient, the Amended Complaint notably lacks any facts of Elizabeth suffering an asthma attack after the delivery of the air purifiers. (*See* Am. Compl. ¶ 4 (stating that "Elizabeth had suffered [a] severe asthma attack and was in the middle of one" when the air purifiers arrived).) Because the Fedynichs present only conclusory allegations to the contrary, the Court finds that the Defendants did not fail to provide "reasonable" and "necessary" accommodations to afford

19

the Fedynichs "equal opportunity[] to use and enjoy [their] housing." *Bryant Woods Inn*, 124 F.3d at 603 (citing 42 U.S.C. § 3604(f)(3)).

### e. The Fedynichs Do Not Plausibly Allege Facts to Reasonably Infer a Nexus Between Their Alleged Disability and Defendants' Alleged Discrimination

Beyond a lack of sufficient plausible facts to show disability or discrimination, the Court also finds that the Fedynichs do not plead sufficient facts to allow this Court to reasonably infer a plausible nexus between their alleged disability and Defendants refusal to grant them reasonable accommodations. *See Hardaway*, 2012 WL 3903489, at *6. ("In addition to failing to elaborate on the nature of [plaintiff's] disability, they have not alleged a plausible nexus between her disability and the alleged discriminatory acts [nor] set forth . . . facts suggesting that a reasonable accommodation was requested or denied.")

Although the Fedynichs allege that Defendants "were counting on [the Fedynichs] to give up and walk away" in order to "rid themselves of the problem [Defendants] created by unfairly treating tenants with preferential treatment," the Amended Complaint does not contain more than this conclusion as to Defendants' intent in purportedly denying the Fedynichs reasonable accommodations. (Am. Compl. 12.) A plaintiff must do more than allege a "disagreement with . . . defendant's policies" to show a nexus between their disability and any alleged discrimination. *Compare Croley v. Hunting Creek Club Condo. Assoc.*, No. 105cv1326, 2005 WL 5269272, at *2–3 (E.D. Va. Dec. 13, 2005), *aff'd*, 201 F. App'x 953 (4th Cir. 2006) (dismissing FHA claim where plaintiff alleged only that he suffered from a disability and defendants denied him use of the parking lot by towing his car), *with Matarese*, 761 F. Supp. 2d at 361 (finding a nexus between alleged discrimination and plaintiff's disability where defendants told plaintiff they were "tired of accommodating [her]").

20

Because mere labels and conclusions alone do not suffice, the Court finds that the Fedynichs do not allege sufficient probable facts to show a nexus between Defendants' alleged discrimination and any disability, and as such, must dismiss Counts I and II.

**2.     Count III:  The Court Will Dismiss the Hostile Environment Claim Because the Fedynichs Do Not Allege Sufficient Plausible Facts to Suggest Defendants' Conduct Was "Severe or Pervasive"**

Because the Fedynichs do not allege sufficient plausible facts to suggest that Defendants created an objectively hostile environment based on "severe or pervasive" conduct, the Court will dismiss the Hostile Environment Claim.  24 C.F.R. § 100.600.

**a.     Legal Standard:  Hostile Environment Under the FHA**

The FHA prohibits, pursuant to 24 C.F.R. § 100.600:

> unwelcome conduct that is sufficiently severe or pervasive as to interfere with:  The availability, sale, rental, or use or enjoyment of a dwelling; the terms, conditions, or privileges of the sale or rental, or the provision or enjoyment of services or facilities in connection therewith; or the availability, terms, or conditions of a residential real estate-related transaction.

24 C.F.R. § 100.600.  "The existence of a hostile environment is determined by a totality of the circumstances, which includes the nature of the conduct, the context in which the incident(s) occurred, the severity, scope, frequency, duration, and location of the conduct, and the relationships of the persons involved."  *Harsy v. Mid-Am. Apartment Cmtys., Inc.*, No. 1:17cv87, 2017 WL 2728034, at *6 (E.D. Va. June 22, 2017) (citing 24 C.F.R. § 100.600).

As the Fourth Circuit has held in the similar employment context, the "severe or pervasive" element "has both subjective and objective components."  *Ocheltree v. Scollon Prods., Inc.*, 335 F. 3d 325, 333 (4th Cir. 2003).  First, a plaintiff must show that she "subjectively perceive[d] the environment to be abusive."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993).  Next, a plaintiff must demonstrate that the conduct was such that "a

21

reasonable person in the plaintiff's position" would have found the environment hostile or abusive. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998). Courts should not construe the FHA as a "general civility code[]" that prevents rude or undesirable behavior. *Id.* at 81.

> **b.      The Fedynichs Do Not State a Claim for Hostile Environment Because the Fedynichs Do Not Allege More Than Merely "Uncivil" Actions**

Even if the Fedynichs found Defendants' action "uncivil," such actions "cannot be seen as objectively altering the conditions of [their] housing," and therefore, the Court must dismiss the Hostile Environment Claim. *Harsy*, 2017 WL 2728034, at *7. The Fedynichs primarily allege that Defendants created a hostile environment by allegedly informing the neighbors about the Fedynichs' complaints, blocking their emails and calls, closing the offices to avoid communication, and otherwise using a "hostile and resentful" tone and discriminating against them. (Am. Compl. 6–7.)

The Fedynichs do not suggest how informing their neighbors of their complaint amounts to harassment. And while the behavior alleged by the Fedynichs might have been rude or undesirable, it does not rise to the level that courts typically find objectively creates a hostile environment. *Compare Ocheltree*, 335 F.3d at 333 (finding defendants created a hostile environment by subjecting the plaintiff to "graphic descriptions of sexual activity . . . that consistently painted women in a . . . demeaning light"), *with Harsy*, 2017 WL 2728034 (dismissing plaintiff's hostile environment claim where defendants entered the apartment when plaintiff was undressed and laughed at plaintiff when he complained about the incident). The Court struggles to find how Defendants could seek redress for the Fedynichs' complaints without contacting their neighbors. Indeed, Defendants actions in informing the Fedynichs' neighbors of

the complaints of indoor smoking would seem to indicate that Defendants were trying to address the Fedynichs' concerns.  Here, even reading the Fedynichs' claims liberally and drawing all reasonable inferences in their favor, the Court cannot find that a reasonable plaintiff in their position would have found Defendants' statements to the neighbors or their general tone to be hostile or abusive.  *Oncale*, 523 U.S. at 81–82.  Their claim for a hostile environment thus represents mere rude or undesirable behavior which the FHA does not address.  *Id.*

Because the Fedynichs do not allege sufficient plausible facts to suggest that Defendants' actions amounted to "severe or pervasive" conduct that interferes with their enjoyment of the dwelling, the Court will dismiss Count III, the Hostile Environment Claim.

### 3.    Count IV:  The Court Will Dismiss the *Quid Pro Quo* Claim Because the Fedynichs Do Not Allege That Defendants' Offers Hinged Upon the Fedynichs' Housing Rights

Because the Fedynichs do not allege that Defendants made any offers that hinged upon the Fedynichs housing rights, the Court will dismiss the *Quid Pro Quo* Claim.  Specifically, the FHA also prohibits "*quid pro quo* harassment" under 24 C.F.R. § 100.600, which defines *quid pro quo* harassment as

> an unwelcome request or demand to engage in conduct where submission to the request or demand, either explicitly or implicitly, is made a condition related to: [t]he sale, rental or availability of a dwelling; the terms, conditions, or privileges of the sale or rental, or the provision of services or facilities in connection therewith; or the availability, terms, or conditions of a residential real estate-related transaction.

24 C.F.R. § 100.600.  Typically, *quid pro quo* harassment claims involve unwanted sexual demands.  *See Noah v. Assor*, 379 F. Supp. 3d 1284, 1290–91 (S.D. Fla. 2019) (finding *quid pro quo* harassment occurred when landlord declined to renew victim's lease because she refused to be his girlfriend).

23

The Fedynichs do not allege that Defendants made any demands on them as a condition

to the terms of their lease or housing.  The Fedynichs state that Defendants offered them a

number of accommodations (including installing air purifiers, allowing transfer to a different

unit, and offering money towards relocating to a more suitable apartment), but they never state

any facts as to whether these offers constituted a *quid pro quo* transaction, wherein the Fedynichs

had to take the offer or suffer a consequence to their housing rights.  Because the Fedynichs fail

to allege that Defendants hinged any offer on the Fedynichs' housing rights, the Court will

dismiss Count IV, the *Quid Pro Quo* Harassment Claim.

> **4.      Count V:  The Court Will Dismiss the Disparate Impact Claim
> Because the Fedynichs Do Not Plausibly Allege the Existence
> of a Facially Neutral Policy That Resulted in Discrimination**

Because the Fedynichs do not allege facts to suggest the existence of a "facially neutral

policy that actually or predictably results in discrimination," the Court must dismiss their

Disparate Impact Claim.  "A disparate-impact claim challenges a facially neutral policy that

actually or predictably results in discrimination."  *Matarese*, 761 F. Supp. 2d at 363.  "In order to

survive a motion to dismiss . . . , the [Fedynichs] must demonstrate a robust causal connection

between the defendants' challenged policy and the disparate impact on the protected class."

*White v. City of Annapolis*, 439 F. Supp. 3d 522, 537 (D. Md. 2020).  A disparate-impact claim

"must fail if the plaintiff cannot point to a defendant's policy or policies causing [the alleged]

disparity."  *Id.* (citation omitted).

The Fedynichs assert that by "Valor's refusal to uphold and enforce their lease, one entire

segment of the population, the disabled, specifically those with breathing and respiratory issues,

allergies, and multiple chemical sensitivity need not apply to Valor apartments."  (Am. Compl.

10.)  The Fedynichs state in the Amended Complaint that they "learned of another family who

24

[was] moving out because of marijuana affecting their infant daughter." (*Id.*)  In general, the Fedynichs allege that smoke simply "emanat[ed] from the buildings." (*Id.*)

First, the Court cannot identify what facially neutral policy, if any, the Fedynichs challenge here.  Reading the Amended Complaint liberally, the Fedynichs could be challenging Valor's smoking policy that allowed residents to smoke across the premises, including on patios, balconies, and in common areas.  On the other hand, the Fedynichs seem to allege that Valor had a policy to not enforce the no indoor-smoking policy.  Because the Fedynichs "cannot point to a . . . policy or policies causing [the alleged] disparity," the Court must dismiss the Disparate Impact Claim.  *White*, 439 F. Supp. 3d at 537.  And, as noted above, the Fedynichs do not plausibly allege that they fall within a "protected class" under the FHA.

Even assuming that the Fedynichs seek to challenge a policy of not enforcing the no-indoor-smoking rule, the Fedynichs do not, even reading the Amended Complaint liberally, allege that such a policy existed.  While the Fedynichs state that smoke "emanat[ed] from the buildings," and that the "smell [was] not accompanied by persons outside smoking," (Am. Compl. 10), the Amended Complaint does not plausibly allege that such a smell derived from any policy to not enforce the no-indoor-smoking policy.  Further, although the Fedynichs allege that another family left the apartment complex because of smoking concerns, the Court cannot reasonably infer without more, that the family's decision stemmed from Valor's failure to enforce the no-indoor-smoking rule, nor that this family also was handicapped or disabled under the meaning of the Fair Housing Act or Rehabilitation Act.[25]

_____

[25] Even if the Court were to accept the Fedynichs' own experience as evidence of such a "policy" based on their claims that Defendants failed to enforce the no indoor-smoking policy against their neighbor, the Court cannot accept "evidence of the alleged effects of a neutral policy on one individual, with no evidence of the application of this policy on others." *Matarese*, 761 F. Supp. 2d at 363.

Similarly, the Fedynichs do not allege sufficient plausible facts for this Court to infer "a robust causal connection between [Defendants'] challenged policy and the disparate impact on the protected class" because as they correctly acknowledge, Valor did not guarantee a smoke-free property. *See White*, 439 F. Supp. 3d at 537. Any impact on those with breathing and respiratory issues could necessarily result from smoking permitted under Valor's smoking policy and not Defendants' alleged policy to not enforce the indoor-smoking policy. As such, the Fedynichs could not allege that a robust nexus between any indoor smoking, as opposed to smoking that occurs on balconies and patios for example, and any impact on those with breathing and respiratory issues.

Because the Fedynichs "cannot point to a . . . policy or policies causing [the alleged] disparity," *White*, 439 F. Supp. 3d at 537; prove that they fall under a protected class; or, show a robust causal connection between any policy and the alleged disparate impact, the Court will dismiss Count V, the Disparate Impact Claim.

5.      **Count VI: The Court Will Deny the Motion to Dismiss the Retaliation Claim As Alleged Against Valor Because the Fedynichs Allege that Valor Included Their Letter as Grounds for Eviction**

The Fedynichs' allegations allow the reasonable inference that Defendants retaliated against them after sending a letter to other tenants concerning housing rights by subsequently serving them an Unlawful Detainer Action. As such, the Court finds that the Fedynichs allege sufficient plausible facts to state a claim for retaliation under the FHA.

"The FHA makes it 'unlawful to coerce, intimidate, threaten, or interfere with *any person* in the exercise or enjoyment of, or on account of his [or her] having exercised or enjoyed' rights protected by the FHA." *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 97–98 (4th Cir. 2016) (quoting 42 U.S.C. § 3617) (noting that FHA retaliation relies heavily on Title VII

26

precedent).  "The basis of recovery does not require that the claimant be disabled."  *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001) (analyzing ADA retaliation under the Title VII standard).  Absent direct evidence, to state an indirect claim for retaliation under the FHA, the Fedynichs must establish that:  "(1) [they] engaged in a protected activity; (2) [Defendants were] aware of that activity; (3) [Defendants] took adverse action against [them]; and, (4) a causal connection existed between the protected activity and the asserted adverse action."  *Id.* at 392; *see also* 24 C.F.R. § 100.400.  Protected activity includes any "action taken to protest or oppose statutorily prohibited discrimination" or "the exercise or enjoyment of rights under 42 U.S.C. § 3604 to equal services and conditions of housing."  *Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402, 442 (E.D. Va. 2011), *vacated in part on other grounds*, 468 F. App'x 283 (4th Cir. 2012).

Read liberally, the Amended Complaint provides that the Fedynichs, among other things,[26] "wrote a letter to the residents of the building . . . to inform them of their rights."  (Am. Compl. 13.)  The Fedynichs allege that following this action, Valor included "the letter Plaintiffs wrote to other residents as a reason for eviction."  (*Id.*)  The Fedynichs do not attach the letter or any communications from Valor.  Nevertheless, because the Court must read the Amended Complaint liberally and draw all reasonable inferences in favor of the Fedynichs, the Fedynichs plausibly allege facts that Defendants retaliated against them by using as grounds for eviction a letter to other tenants about their rights "under 42 U.S.C. § 3604 to equal services and conditions

---

[26] The Court notes that although requesting reasonable accommodations typically qualifies as a protected activity, the Fedynichs, as stated above, do not allege sufficiently plausible facts to support a reasonable inference that they suffered from a qualifying disability. Therefore, their requests for accommodations cannot constitute a "protected activity."  *See Matarese*, 795 F. Supp. 2d at 442 ("Protected activity includes any action taken to protest or oppose statutorily prohibited discrimination or the exercise or enjoyment of rights under 42 U.S.C. § 3604 to equal services and conditions of housing." (internal quotations omitted)).

of housing," and the Fedynichs "protest" of alleged violations of such actions. *Matarese*, 795 F. Supp. 2d at 442.

As courts have previously found, nonrenewal of a lease and other efforts to remove a tenant may be considered an adverse action when conducted in temporal proximity to alleged protected activity. *See Matarese*, 795 F. Supp. 2d at 443; *see also Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (per curiam) ("[A] causal connection for purposes of demonstrating a *prima facie* case exists where [defendant] takes adverse . . . action against [plaintiff] shortly after learning of the protected activity." (citation omitted)).  Although the Fedynichs do not allege when they received the Unlawful Detainer Action relative to when they sent their own letter, they do allege that Valor's Unlawful Detainer Action against them included as a basis for eviction the letter sent by the Fedynichs.  Because the Fedynichs allege that Valor relied on their protected activity as grounds to evict them, the Court finds that the Fedynichs allege sufficient plausible facts to show Defendants retaliated against them for allegedly informing other tenants of certain housing rights.

Further, although Defendants argue in the Motion to Dismiss that the Fedynichs do not sufficiently allege facts as to the actions of any particular defendant, the Court finds that, liberally construed, the Fedynichs allegations sufficiently "raise a right to relief above the speculative level," by presenting "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the alleged activity. *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010); *see also J.J. Crewe & Son, Inc. Profit Sharing Plan v. Talbot*, No. 11cv2871, 2012 WL 1994778, at *9 (D. Md. June 1, 2012) (finding questions inappropriate for resolution upon motion to dismiss where documents in support of the facts at issue fell within defendant's "possession or control").

28

At this stage, the Fedynichs would not have information as to which of the six defendants partook in facilitating and exacting the Unlawful Detainer Suit. Such evidence remains solely in the "possession or control" of Defendants. *J.J. Crewe & Son*, 2012 WL 1994778, at *9. Therefore, the Court finds the Fedynichs allege facts sufficient to suggest that at least one of the Defendants retaliated against them by filing the Unlawful Detainer Action and including as a basis for eviction the Fedynichs' letter. As such, the Court will deny the Motion to Dismiss as to Count VI.

6.    **Count VII: The Court Will Dismiss the Breach of Contract Claim Because the Fedynichs Do Not Allege That Defendants Breached Any Legally Enforceable Obligation**

Because the Fedynichs do not allege that their individual lease subjected Defendants to any legally enforceable obligation to evict neighboring tenants for smoking, the Court must dismiss the Breach of Contract Claim.

"To state a claim for breach of contract under Virginia law, a plaintiff must plausibly allege in federal court: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of the obligation; and, (3) an injury or harm caused by the defendant's breach." *Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 860 (E.D. Va. 2016), *aff'd*, 699 F. App'x 242 (4th Cir. 2017) (citing *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)).

The Fedynichs cannot meet the first two elements of a breach of contract claim because they do not allege a legally enforceable obligation or breach. The Fedynichs appear to assert that by failing to enforce the no indoor-smoking policy against their neighbors, Defendants breached a legally enforceable obligation. The Fedynichs do not, however, identify any specific provision of their lease agreement that Defendants breached by "abdicat[ing] their duties to enforce their lease." (Am. Compl. ¶ 7.) The Fedynichs point only to their own lease, which

29

prohibits no smoking in the unit.  The Fedynichs do not identify any obligation requiring

Defendants to act against other residents for breaching the terms of their separate lease

obligations.

Construing the Amended Complaint liberally, the Fedynichs may be attempting to

suggest that the Court should find them to be third-party beneficiaries of Defendants' leases with

other tenants.  Va. Code Ann. § 55.1-119[27] "enables a third party to take an interest under an

instrument, although not a party to it, if the promise is made for the third party's benefit and the

evidence shows that the contracting parties *clearly and definitely intended* to confer a benefit

upon such third party."  *BIS Computer Sols., Inc. v. City of Richmond, Va.*, 122 F. App'x 608,

611 (4th Cir. 2005) (emphasis in original) (internal quotations and citations omitted).  However,

"a person who benefits only incidentally from a contract between others cannot sue thereon."  *Id.*

(internal quotations and citations omitted) (finding subcontractor did not qualify as third-party

beneficiary because contract's "primary purpose" did not consider subcontractor as anything

more than "incidental" to the contract).

In this case, the Fedynichs do not plausibly allege that suggest that Defendants

considered other tenants' leases to be "made for the [Fedynichs'] benefit."  *Id.*  As a result, the

Court will dismiss Count VII, the Breach of Contract Claim.

---

[27] Virginia Code § 55.1-119 reads, in pertinent part:

An immediate estate or interest in or the benefit of a condition respecting any estate
may be taken by a person under an instrument, although he be not a party thereto;
and if a covenant or promise be made for the benefit, in whole or in part, of a person
with whom it is not made, or with whom it is made jointly with others, such person,
whether named in the instrument or not, may maintain in his own name any action
thereon which he might maintain in case it had been made with him only and the
consideration had moved from him to the party making such covenant or promise.

Va. Code Ann. § 55.1-119.

7.     **Count VIII:  The Court Will Dismiss the Constructive Eviction Claim Because the Fedynichs Do Not Allege That They Abandoned the Property Due to An Intentional Act or Omission by Defendants**

Because the Fedynichs do not allege they abandoned their apartment nor point to an intentional act or omission by Defendants, the Court must dismiss their Constructive Eviction Claim.  In Virginia, "[a]n intentional act or omission by the landlord, depriving the tenant of possession or beneficial use of the leasehold, *together with* abandonment by the tenant within a reasonable time constitutes constructive eviction." *United States v. .28 Acres of Land, Buchanan Cnty., Va.*, 347 F. Supp. 2d 273, 277 (W.D. Va. 2004) (citation omitted) (emphasis in original).  To successfully claim constructive eviction, the tenant "must abandon the premises within a reasonable time. *S. Motors, Inc. v. Va. Nat. Bank*, 73 B.R. 261, 264 (W.D. Va. 1987), *aff'd sub nom.*, *Mullins v. S. Motors, Inc.*, 829 F.2d 1120 (4th Cir. 1987).  In sum, "[c]onstructive eviction provides a tenant with the right to abandon the premises and stop paying rent, not the ability to continue in possession rent-free." *Id.*

The Fedynichs say that the air quality in their apartment caused them to sleep on their patio in a tent "because they could no longer safely sleep in their home." (Am. Compl. 14.)  Although such facts give the Court pause, they do not undergird a constructive eviction claim because the Fedynichs do not allege facts to support that the air quality caused them to "abandon the premises within a reasonable time." *.28 Acres*, 347 F. Supp. 2d at 277.  Even if the Court were to consider their sleeping on the patio "abandonment," the Fedynichs do not plausibly allege that the indoor smoking resulted from any intentional act or omission by Defendants.

While the Fedynichs state that Defendants "intentionally abdicated their duties to enforce their lease," (Am. Compl. 9), a "wrongful act of a third person in disturbing the possession of a tenant does not constitute an eviction which the tenant can assert against the landlord, unless the

landlord was obligated to protect the tenant against the act, or unless [the landlord] authorized the third person to commit the act." *Nottingham Assocs. v. Christian*, No. LT-1197-1, 1992 WL 884950, at *2 (Oct. 6, 1992). Again, the Fedynichs are not third-party beneficiaries of any lease between other tenants and Defendants. And although the Fedynichs argue otherwise, the facts contained in the Amended Complaint show that, on more than one occasion, Defendants made efforts to address the Fedynichs complaints by providing the Fedynichs with money to relocate, offering a transfer of units, and allowing them the opportunity to break their lease early. Therefore, the Amended Complaint, even read liberally, cannot support a finding that Defendants explicitly or impliedly "authorized" the indoor smoking. *Id.*

Because the Fedynichs do not allege that they abandoned their apartment in a reasonable time or that any act or omission by Defendants specifically deprived them of possession or beneficial use of their apartment, the Court will dismiss Count VIII, the Constructive Eviction Claim.

**B.     The Court Will Grant the Motion to Remand or Strike but Deny Fees, and Deny the Motion to Join**

Because the face of the Unlawful Detainer Action does not implicate a federal question and the Fedynichs do not otherwise suggest that the Court has diversity jurisdiction, the Court will grant the Motion to Remand or Strike in part, remanding the Unlawful Detainer Action, and deny the Motion to Join. The Court will deny the Motion to Remand or Strike as to Defendants' request for attorneys' fees.

**1.     The Court Will Grant the Motion to Remand or Strike and Deny the Motion to Join Because No Basis for Removal Exists**

Read liberally, the Fedynichs seek in the Motion to Join to remove the Unlawful Detainer Action to this Court and join such action to this matter. In the Motion to Join, the Fedynichs

seek to join the state action with a dismissed case previously before this Court:  No. 20cv262. (Mot. Join 4, ECF No. 10.)  Because the Motion to Join mirrors the Fedynichs' filing in No. 20cv262, the Court reads the Motion to Join liberally as seeking to remove and join the unlawful detainer to this action.

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action to a federal district court if the plaintiff could have originally brought the action in federal court.  28 U.S.C. § 1441(a).  A federal court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A federal district court has diversity jurisdiction over "all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between . . . [c]itizens of different states."  28 U.S.C. § 1332(a)(1).

"The party seeking removal bears the initial burden of establishing federal jurisdiction." *Abraham v. Cracker Barrel Old Country Store, Inc.*, No. 3:11cv182, 2011 WL 1790168, at *1 (E.D. Va. May 9, 2011) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)).  No presumption favoring the existence of federal subject matter jurisdiction exists because federal courts have limited, not general, jurisdiction.  *Id.* (citing *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999)).  In deference to federalism concerns, courts must strictly construe removal jurisdiction.  *Id.* (citing *Mulcahey*, 29 F.3d at 151).  "If federal jurisdiction is doubtful, a remand is necessary."  *Id.* (quoting *Mulcahey*, 29 F.3d at 151).

As the Court found in No. 20cv262, no basis for removal exists here.[28]  Although the Fedynichs again allege here that the Unlawful Detainer Action "is inexplicably intertwined with"

---

[28] Previously, the Court dismissed No. 20cv262 for a "failure to prosecute" pursuant to Federal Rule of Civil Procedure 41(b) based on the Fedynichs' failure to amend their Complaint pursuant to the Court's June 15, 2020 Order (the "Order").  (*See* June 15, 2020 Order, No. 20cv262, ECF No. 7.)  On June 18, 2020, three days after the Court issued the Order, the Fedynichs filed a Motion to Join the Unlawful Detainer Action to case No. 20cv262.

what the Court will treat as this open case, (Mot. Join 4), the "well-pleaded complaint rule, . . . absent diversity, prohibits removal unless a federal question appears on the face of the" state action. *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 210 (4th Cir. 2016).

### 2.    The Court Will Deny the Motion to Remand or Strike as to Defendants' Request for Attorneys' Fees and Instead Issue the Fedynichs a Rule 11 Warning

In the Motion to Remand or Strike, Defendants request that the Court either remand the Unlawful Detainer Action or strike the Fedynichs' Motion to Join. Because the Fedynichs seek, for the second time, to remove the same state-law action as previously denied by this Court, Defendants seek attorneys under 28 U.S.C. § 1447(c).[29]

Although the Court finds some basis to Defendants' argument that the Fedynichs unreasonably filed the Motion to Join, the Court will deny the Motion to Remand or Strike as to Defendants' request for attorneys' fees based on the Fedynichs' *pro se* status. The Court reminds the Fedynichs of the requirements under Federal Rule of Civil Procedure 11. Rule 11(b) requires any party that signs a motion to conduct a reasonable inquiry into the facts and law underlying the submission in order to ensure that the motion is well grounded factually and legally. *See* Fed. R. Civ. P. 11(b).[30] Importantly, Rule 11 applies to both represented and *pro se*

---

(No. 20cv262, ECF No. 8.) On July 21, 2020, the Court denied the Motion to Join in 20cv262, finding that the Fedynichs offered no justification in law to reopen their case. (July 21, 2020 Order 1, No. 20cv262, ECF No. 9.) In a footnote, the Court otherwise found "no basis for removal." (*Id.* 2 n.1.)

[29] As provided by 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

[30] Federal Rule of Civil Procedure 11(b) reads in full:

(b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper whether by signing, filing, submitting, or later advocating

34

parties. *See Harmon v. O'Keefe*, 149 F.R.D. 114, 116 (E.D. Va. 1993) (internal citation omitted).

The Fedynichs have now for the second time attempted to remove an Unlawful Detainer Action—once preventatively and now in fact.  In another case, No. 20cv262, the Court already found that such a removal lacked basis under federal law.  As such, "[e]ven a brief inquiry . . . would have revealed that these motions were not pertinent . . . and would be inevitably denied." *Price v. First Star Mortg.*, No. 2:03cv568, 2006 WL 2381921, at *3 (E.D. Va. Aug. 15, 2006).

Although the Court remains cognizant of the Fedynichs' *pro se* status, *pro se* plaintiffs "must nevertheless abide by minimum standards of rationality and specificity." *In re Grenadier*, No. 1:18mc10, 2018 WL 3233648, at *7 (E.D. Va. July 2, 2018), *aff'd*, 753 F. App'x 179 (4th Cir. 2019).  The filing of frivolous motions imposes costs on opposing parties and the Court, delays litigation, and fails to serve the ends of justice.  The Court therefore WARNS the

---

it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

35

Fedynichs that their lack of counsel does not excuse them from the obligation to file only those motions that have a good faith basis in law and fact and meet the requirements of Rule 11. Otherwise, the Court may consider sanctions under Rule 11(b), including monetary penalties or a prefiling injunction. *Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1008 (4th Cir. 2014) ("If a court 'determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation . . . although the sanction 'must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.'").

### VI.  Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss as to all counts except Count VI, the Retaliation Claim. (ECF No. 12.)  The Court will grant the Motion to Remand or Strike, remanding the Unlawful Detainer Action, but will deny Defendant's request for fees.  The Court will deny the Motion to Join.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 2/23/2021
Richmond, Virginia

36